UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FLORA PAZOS,
*individually and on behalf of
all others similarly situated,*

    Plaintiff,

v.

DIL MIL INC.,
D/B/A EURODATE.COM,

    Defendant.
_____/

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMAND**

Plaintiff Flora Pazos ("Plaintiff") brings this class action against Dil Mil, Inc. d/b/a EuroDate.com ("Defendant") and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is a putative class action. Plaintiff brings claims, both individually and on behalf of others similarly situated, sounding in breach of express warranty, fraudulent inducement, strict products liability, unjust enrichment, and negligence. Overall, Plaintiff seeks damages on behalf of herself and members of the Class (defined below), and any other available legal or equitable remedies.

2. Defendant operates an online dating website called Eurodate.com. On Eurodate.com, Defendant represents to consumers that the purpose of the platform is to be able to experience "Exclusive Dating with Member Screening":[1]

---

[1] EURODATE.COM , https://www.eurodate.com/ (last accessed April 20, 2025).

1



3. During the account setup process on Eurodate.com, users share their personal information and preferences, including name, gender, age range, sexual preference, etc. Additionally, users can upload a photo of themselves to their online dating profile. Overall, Defendant gathers this information to both set up the user's dating profile and to narrow the universe of potentially compatible matches.

4. Eurodate.com leads consumers to believe that Defendant is matching them with only real and similarly-interested individuals. However, many consumers, including Plaintiff, have been deceived by Defendant into thinking this. Instead, Defendant has employed paid actors to interact with consumers online through the guise of a seemingly real dating profile.

5. Further, the privacy policy of Eurodate.com[2] ("the "Privacy Policy") directly implicates that Defendant protects users from any form of internet scams, spam, and/or fraudulent credit card activity, further assuring its users that they are "safe" from such wrongful activities.[3]

---

[2] Privacy Policy, EURODATE.COM, https://www.eurodate.com/en/policy/ (last accessed April 14, 2025).
[3] *Id.*, at 11 ("[t]his means that you are safe from any viruses, identity theft, spyware, fraudulent credit card activity, spam, and internet scams while you are visiting the Website").

6. Over the course of two years, Plaintiff paid Defendant and its affiliates approximately $300,000 for online dating product. Unbeknownst to Plaintiff, Defendant was matching Plaintiff with fraudulent dating profiles. These fraudulent dating profiles displayed every characteristic of a real person, including photographs of real, existing people. However, behind these manufactured profiles were actors who were hired by Defendant to engage with Defendant's customers. These paid actors engaged with Plaintiff and class members, causing Plaintiff and class members to believe they were speaking to real, interested people and, thus, to spend more money on Defendant's product.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as the amount in controversy exceeds $5 million, exclusive of interests and costs; it is a class action of over 100 members; and the Plaintiff is a citizen of a state different from at least one Defendant. Plaintiff alleges that the total claims of individual members of the proposed Class are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

8. The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant's wrongful conduct was directed to Plaintiff and other similarly situated consumers in this District.

## PARTIES

9. Plaintiff is a natural person, and a citizen and resident of Miami-Dade County, Florida.

10. Defendant is a Delaware corporation, with its principal place of business located in San Francisco, California. Upon information and belief, Defendant owns and operates EuroDate.com, an online dating website.

11. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

**FACTS**

12. In or about February, 2022, Plaintiff subscribed to Defendant's platform for the purposes of online dating in a purportedly secure program.

13. Between approximately February 2022 and September 2024, Plaintiff spent approximately $300,000 on Defendant's and its affiliates' online dating products, with a significant proportion of this being paid directly to Defendant for Defendant's online dating product.

14. In or about February 2023, Plaintiff began chatting with an individual working under the name "Marcio" (hereinafter referred to as "Marcio") on EuroDate.com.

15. Marcio's online profile on EuroDate.com had all the characteristics of being made by a real person who similarly utilized Defendant's online dating product. For example, the online profile had several pictures of a real, existing person. However, unbeknownst to Plaintiff, the person communicating with Plaintiff behind the online profile was not the person in the pictures, but instead an actor being employed by Defendant to communicate with unsuspecting consumers.

16. Plaintiff interacted with Marcio's online profile for approximately six (6) months. Eventually, the Marcio profile gave Plaintiff a phone number to further communicate via What's App.

17. At a time better known to Defendant, the actor(s) controlling the Marcio online profile asked Plaintiff to travel to Colombia to meet Marcio in-person.

18. In or about September, 2024, Plaintiff travelled to Bucaramanga, Colombia for what she thought was a trip to meet the man in the pictures on the "Marcio" profile.

19. Once Plaintiff arrived to Bucaramanga, Colombia, a lady by the name of Noelys Del Valle Salazar Vazquez (hereinafter referred to as "Noelys"), whom claimed to be Marcio's "boss," advised Plaintiff that Marcio was dealing with the passing of his mother and would not be able to meet Plaintiff in Bucaramanga. Instead, Noelys requested that Plaintiff travel to Medellin, Colombia to meet with Marcio. In the interim, Noelys requested that Plaintiff send money in order to help Marcio and his son from a potential eviction.

20. Additionally, Noelys attempted to gain trust from Plaintiff by noting specific details from conversations between Plaintiff and Marcio.

21. However, upon speaking with Noelys, Plaintiff instead was of the belief that she was never talking to Marcio but was instead talking to Noelys on Eurodate.com.

22. Eventually, Plaintiff's conversation with Noelys escalated, as Noelys demanded that Plaintiff furnish her with money and threatened Plaintiff by stating that her "life [was] in danger."

23. Plaintiff refused to abide by Noelys' demands, as Plaintiff was under the belief that the Marcio profile was a fraudulent ploy to extract money from Plaintiff.

24. After speaking with Noelys, Plaintiff promptly filed a police report in the city of Medellin, Colombia, related to this fraudulent misconduct.

25. Approximately three (3) days after initially traveling to Colombia, Plaintiff returned home to Miami, Florida.

5

26. One week after her return to Miami, Plaintiff received an email (the "E-Mail"). from someone who claimed their name was "Robert" (hereinafter referred to as "Robert").

27. The E-Mail first instructed Plaintiff to stop using Defendant's dating website, EuroDate.com. The E-Mail then went on to explain that Defendant utilizes paid actors to communicate with consumers who use EuroDate.com. According to the E-mail, Defendant had one or more communication center(s) set up in Colombia, where paid actors would spend their days communicating with unsuspecting consumers who thought they were communicating with real, interested individuals, who were similarly looking for a significant other.

28. Robert claimed in the E-Mail that he was one such actor, and that at one point he had been communicating with Plaintiff under the guise of a profile named "Joel."

29. Plaintiff reached out to Defendant to inquire about the alleged fraudulent nature of their product. Specifically, Plaintiff requested a video from all of the people she had communicated with on Defendant's dating sites to prove that they were real, interested individuals.

30. In order to further sell its fraudulent dating scheme to Plaintiff, Defendant had the person displayed in the pictures on the "Joel" profile make a video specifically for Plaintiff. However, Plaintiff did not receive personalized videos from *anyone* else whom she spoke to on Defendant's dating sites.

31. Plaintiff is informed and believes that Defendant has directed this fraudulent scheme to numerous consumers in the United States.

32. Defendant's fraudulent scheme caused Plaintiff to expend thousands of dollars on Defendant's dating product. Based on Plaintiff's experiences, Defendant charges consumers based on total messages sent on EuroDate.com. Therefore, the more a consumer messages on EuroDate.com, the more they pay Defendant. Overall, Defendant's fraudulent scheme caused

Plaintiff to spend thousands of dollars before she acquired knowledge of such fraudulent scheme. Plaintiff spent this money thinking she was messaging only real, interested individuals on EuroDate.com. Instead, Plaintiff was messaging several fake profiles that had paid actors behind the messages she received in response.

## CLASS ALLEGATIONS

### PROPOSED CLASS

33. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), on behalf of Plaintiff and all others similarly situated.

34. Plaintiff seeks to represent a nationwide class (The "Class") defined as:

> **All persons in the United States who, during the maximum period of time permitted by law, made purchases of Defendant's online dating product on EuroDate.com.**

35. Defendant and its employees or agents are excluded from the Class.

36. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through the course of litigation, discovery, legal arguments advanced by Defendant, or otherwise.

## Fed. R. Civ. P. 23(a) Criteria

### NUMEROSITY

37. Plaintiff does not know the exact number of members of the Class but is informed and believes that there are at least 50 individuals who fall within the class definition given Defendant's use of one or more communication centers to employ multiple individuals who fraudulently interact with Defendant's customers online. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

38. The exact number and identities of the members of the Class are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

### COMMON QUESTIONS OF LAW AND FACT

39. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

   a. Whether Defendant hired and paid actors to interact with members of the Class on what otherwise seemed like legitimate dating profiles; and

   b. Whether Defendant is liable for damages, and the amount of such damages.

40. The common questions in this case are capable of having common answers, and Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

41. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

42. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

43. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class

is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

44. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

### Rule 23 (b)(3) Criteria

45. The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members. A class action provides a fair and efficient method for the adjudication of this controversy for these reasons and is superior to the alternative methods involved in individual litigation.

46. Although the Class is numerous enough to meet the numerosity requirement, the proposed Class does not create manageability problems because the claims turn on common legal determinations. Either Defendant's actions are in violation of Plaintiff's and Class Members' legal or contractual rights, or they are not. There are no unusual legal or factual issues that would create manageability problems as the issues turn on the propriety of Defendant's uniform conduct towards Plaintiff and Class Members through the common use of Eurodate.

47. Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct.

48. Despite the sizeable sum of money unlawfully retained by Defendant, the claims of the individual Class members are, nevertheless, small in relation to the expenses of individual litigation, making a class action the only procedural method of redress in which Class members can, as a practical matter, recover their damages and stop the illegal practices at issue.

49. Class members are readily identifiable and ascertainable given the nature of Defendant's business practices.

## COUNT I
## BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY
**(On Behalf of Plaintiff and the Class)**

50. Plaintiff incorporates by reference Paragraphs 1 through 49 as if fully set forth herein.

51. Plaintiff and Defendant entered into an implied agreement for the use of Defendant's online dating product pursuant to the advertising made by Defendant. Specifically, Defendant represented that Plaintiff would experience "Exclusive Dating with Member Screening."[4]

52. Further, Defendant specifically states within the Privacy Policy that it protects users from any form of internet scams, spam, and/or fraudulent credit card activity, further assuring its users that they are "safe" from such wrongful activities.[5]

---

[4] EURODATE.COM , https://www.eurodate.com/ (last accessed April 20, 2025).
[5] Privacy Policy, EURODATE.COM, https://www.eurodate.com/en/policy/ (last accessed April 14, 2025).

10

53. Overall, Defendant's product failed to meet these terms by Defendant's actions and inactions in not properly monitoring conversations between individuals, not properly verifying individuals using Defendant's platform, and utilizing 'bots' and persons who otherwise were not who the profile alleged, thus not conforming to Defendant's duties as a seller.

54. Plaintiff provided notice of breach to Defendant by and through an e-mail to Defendant.

55. Plaintiff relied on Defendant's implied warranty upon making numerous purchases of Defendant's online dating product.

56. As a direct and proximate result of Defendant's breach, Plaintiff and Class members have suffered damages in the form of lost money, which was expended on Defendant's product.

## COUNT II
## STRICT PRODUCTS LIABILITY
**(Failure to warn)**
**(On Behalf of Plaintiff and the Class)**

57. Plaintiff incorporates by reference Paragraphs 1 through 49, as if fully set forth herein.

58. Defendant is in the business of providing online dating products to consumers.

59. Defendant's online dating product was defective and unreasonably dangerous for use by consumers, including Plaintiff, when used in a reasonably foreseeable manner as intended.

60. Defendant's online dating product was in the same, or a substantially similar condition as it was when it left the control of the Defendant and into Plaintiff's direct use.

61. Upon Plaintiff purchasing and utilizing Defendant's online dating platform, Defendant failed to notify Plaintiff in any way that Defendant was utilizing paid actors to operate dating profiles that were otherwise disguised as real, interested individuals.

62. Defendant knew or should have known the product itself had a risk of harm that was unobvious or unknown to the user and should have resorted to safer and legitimate alternatives. The risks of harm associated with Defendant's product severely outweigh the benefits of its design.

63. Defendant's product was designed in such a way that it exposed individuals who purchased the product to unreasonable risks of harm during the foreseeable use of its product.

64. Defendant had a duty to its users, including Plaintiff, to disclose the dangers and risks when using Defendant's product.

65. The Privacy Policy does not expressly disclose the risks and dangers associated with its use. Rather, the Privacy Policy explicitly states that Defendant protects users from any form of internet scams, spam, and/or fraudulent credit card activity, further assuring its users that they are "safe" from such wrongful activities.[6]

66. This lack of sufficient disclosure or warning contributes to Defendant's product being insensibly hazardous even when used in a predictable manner. These dangers include deception, fraud, extortion, and other various detrimental consequences to its users.

67. But for this insufficient disclosure, Plaintiff would not have made the purchases that she made of Defendant's online dating product.

68. As a direct and proximate result of Defendant's failure to warn Plaintiff of the risks associated with Defendant's online dating product at the time of purchases, Plaintiff and Class members have suffered damages in the form of lost money, which was expended directly on Defendant's product.

---

[6] *Id.*

## COUNT III
## UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

69. Plaintiff incorporates by reference Paragraph 1 through 49, as if fully set forth herein.

70. Plaintiff made multiple purchases, totaling in the hundreds of thousands of dollars, to utilize Defendant's online dating product and conferred a benefit on Defendant in the form of monies paid for the purchase and use of Defendant's product.

71. At all times material hereto, Defendant knew of this benefit and appreciated said benefit specifically because, in the event consumers, such as Plaintiff, utilizing Defendant's online dating product were not to make the purchases associated with product, Defendant would not generate revenue.

72. Plaintiff made multiple purchases from Defendant regarding Defendant's online dating platform. Plaintiff made such purchases for the purpose of being able to communicate with her potential matches.

73. Despite Defendant utilizing paid actors to interact with unsuspecting individuals on its online dating platform, Defendant allowed consumers to continue to make purchases in order to make contact with prospective matches.

74. Defendant's blatant acceptance and retention of the benefit by continuing to charge these consumers is inequitable and unjust. The benefit was derived from Defendant's fraudulent, misleading, deceptive representations and material omissions.

75. As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and Class members suffered damages in the form of lost money, which was expended directly on Defendant's product.

**COUNT IV**
**NEGLIGENCE**
**(Design Defect)**
**(On Behalf of Plaintiff and the Class)**

76. Plaintiff incorporates by reference Paragraphs 1 through 49, as if fully set forth herein.

77. At all times material hereto, Defendant developed, designed, manufactured, marketed, and benefitted from a product that intended to provide people with an experience of dating.

78. Defendant's product contained numerous defects despite its falsified advertising. These defects include, but are not limited to, the use of paid actors to interact with unsuspecting consumers, who thought that they were interacting with real, interested individuals. These defects are uniform for each individual who utilizes Defendant's online dating product.

79. Defendant knew or should have known of the design defects associated with its platform, as mentioned above, and should have exercised reasonable care to protect its users.

80. Defendant knew or should have known that its users would not have realized the potential risks associated with the platform.

81. Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in the creation and maintenance of its product which includes, but is not limited to, the advertising, supervision, and warnings of the risks associated with the platform, in an attempt to reasonably avoid harm.

82. Defendant breached its duty by failing to use reasonable care in the manufacturing and creation of its online dating product, by negligently manufacturing its product in a way that is foreseeably dangerous to its users.

83. The injuries suffered by Plaintiff could have been avoided but for Defendant's negligence in the manufacturing of its online dating product.

84. As a direct and proximate result of Defendant's negligence, Plaintiff and Class members suffered damages in the form of lost money, which was expended directly on Defendant's product.

## COUNT V
## NEGLIGENCE
### (Failure to warn)
### (On Behalf of Plaintiff and the Class)

85. Plaintiff incorporates by reference Paragraph 1 through 49, as if fully set forth herein.

86. At all times material hereto, Defendant developed, designed, manufactured, marketed, and benefitted from a product that intended to provide people with an experience of dating.

87. Defendant failed to warn any of its users, inclusive of Plaintiff, of the potential dangers associated with utilization of Defendant's product. These defects are uniform for each individual that utilizes Defendant's platform.

88. Defendant knew or should have known that its users would not have realized the potential risks associated with its online dating product.

89. Defendant owed a duty to Plaintiff and Class members to exercise reasonable care in providing adequate warnings of the risks associated with Defendant's online dating product and the use of such product.

90. Defendant breached its duty by failing to provide any indications of the risks associated with Defendant's online dating product, including but not limited to: disclosure that not

all profiles on Defendant's online dating profile were operated by the individual pictured therein. Defendant negligently omitted these material facts in order to obtain benefit from Plaintiff and Class members.

91. The injuries suffered by Plaintiff and Class members could have ultimately been avoided if Defendant had adequately disclosed information regarding its online dating product and the individuals behind several dating profiles to reasonably protect its users.

92. As a direct and proximate result of Defendant's negligence, Plaintiff and Class members have suffered damages in the form of lost money, which was expended directly on Defendant's product.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a. **Certification:** For an order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b. **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c. **Injunction:** For an order requiring Defendant to immediately cease and desist from the selling of its products in violation of law; enjoining Defendant from continuing to market, advertise, distribute and sell its product in the unlaw manner described herein; requiring Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the product resulting from Defendant's unlawful conduct; and

    requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

d. **Damages:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiffs and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

e. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

f. **Pre/Post-Judgment Interest**: For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

g. **All Just & Proper Relief:** For any further relief as this Honorable Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

Dated: April 21, 2025.

        Respectfully Submitted,

        /s/ Zane C. Hedaya_____
**JIBRAEL S. HINDI, ESQ.**
Florida Bar No.: 118259
E-mail: jibrael@jibraellaw.com
**ZANE C. HEDAYA, ESQ.**
Florida Bar No.: 1048640
E-mail: zane@jibraellaw.com
**GERALD D. LANE, JR., ESQ.**
Florida Bar No.: 1044677
E-mail: gerald@jibraellaw.com
The Law Offices of Jibrael S. Hindi
1515 NE 26th Street,
Wilton Manors, Florida 33305
Phone: 813-340-8838


**SETH M. LEHRMAN**
E-mail: seth@lehrmanlaw.com
LEHRMAN LAW
Florida Bar No.: 132896
6501 Park of Commerce Blvd., Suite 253
Boca Raton, FL 33487
Telephone: 754-778-9660

*Attorneys for Plaintiff and the proposed class*